# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Curry*, 2013 IL App (4th) 120724

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID CURRY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-12-0724, 4-12-0725, 4-12-0726 cons. |
| Filed | June 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated DUI, driving with an expired registration and improper lane usage were upheld over various contentions, including the denial of his right to counsel of his choice, the court's failure to comply with Supreme Court Rule 431(b) and improper arguments by the State, since defendant did not seek a continuance to obtain new counsel until the day of his trial, the new counsel was not present, and he conditioned his representation on the trial court's grant of a continuance, the trial court's failure to strictly comply with Rule 431(b) did not rise to the level of plain error, and the prosecution arguments at issue were invited by defense counsel and were not improper. |
| Decision Under Review | Appeal from the Circuit Court of Schuyler County, Nos. 12-CF-7, 12-TR-161, 12-TR-163; the Hon. Alesia A. McMillen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Richard D. Frazier (argued) and Nicole D. Nelson, both of Metnick, Cherry, Frazier & Sabin, LLP, of Springfield, for appellant.

Ramon Escapa, State's Attorney, of Rushville (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Presiding Justice Steigmann and Justice Pope concurred in the judgment and opinion.

## OPINION

¶ 1    Following a January 28, 2012, encounter with police, defendant, David Curry, was arrested and subsequently prosecuted for (1) aggravated driving under the influence (DUI) (625 ILCS 5/11-501(d)(1)(A) (West 2010)) (Schuyler County case No. 12-CF-7), (2) driving with an expired registration (625 ILCS 5/3-413(f) (West 2010)) (case No. 12-TR-161), and (3) improper lane usage (625 ILCS 5/11-709(a) (West 2010)) (case No. 12-TR-163).

¶ 2    On the scheduled jury trial date, defendant filed a motion to continue, seeking to obtain new counsel. The trial court denied defendant's motion as untimely, and defendant's trial commenced the following day. During *voir dire*, the court admonished the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) and concluded its admonition by asking each juror individually whether he or she "agreed or disagreed." The jurors all indicated they agreed.

¶ 3    Following defendant's July 2012 trial, the jury found defendant guilty of operating a motor vehicle with an expired registration, improper lane usage, and DUI. In August 2012, during defendant's sentencing hearing, the State presented defendant's certified driving abstract showing defendant had the necessary prior convictions to elevate his DUI conviction to aggravated DUI. The court entered judgment on aggravated DUI, driving with an expired registration, and improper lane usage. The court sentenced defendant to four years in the Illinois Department of Corrections on the Class 2 felony of aggravated DUI.

¶ 4    Defendant appeals, arguing (1) the trial court abused its discretion by denying him his right to counsel of choice, (2) the court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) during *voir dire*, (3) the State committed reversible error by making several improper remarks during closing argument, (4) the court erred by instructing the jury to continue deliberating after the jury indicated it had reached an impasse, and (5) defendant received ineffective assistance of trial counsel.

¶ 5     We affirm.

¶ 6                         I. BACKGROUND

¶ 7                     A. Pretrial Proceedings

¶ 8     Following a January 28, 2012, encounter with police, defendant was arrested and subsequently prosecuted for (1) aggravated DUI (625 ILCS 5/11-501(d)(1)(A) (West 2010)), (2) driving with an expired registration (625 ILCS 5/3-413(f) (West 2010)), and (3) improper lane usage (625 ILCS 5/11-709(a) (West 2010)).

¶ 9     On February 23, 2012, Sharp and Harmon Law Office entered an appearance on behalf of defendant. At the March 21, 2012, preliminary hearing, Michael Harmon appeared for defendant. Following a preliminary hearing, the trial court found probable cause shown to believe defendant committed the felony offense of aggravated DUI. When asked whether he preferred to "go ahead with the arraignment today" or continue the matter, Harmon requested the court continue the case past the first two weeks of April.

¶ 10     On April 18, 2012, the trial court arraigned defendant on the aggravated DUI charge and set the case "on the June jury." On May 23, 2012, the parties appeared for a pretrial hearing, during which the trial court scheduled defendant's case for its June 11, 2012, trial call. The court indicated all trials would start on that date to avoid having 60 jurors present without a case to try. The court also admonished defendant if he answered ready for trial, the court would not accept any plea agreement entered into after the May 23, 2012, pretrial hearing.

¶ 11     On June 11, 2012, Harmon filed a motion to continue. The motion asserted defendant contacted the Sharp and Harmon Law Office on May 30, 2012, and informed the office he had hired new counsel. On June 1, 2012, Sharp and Harmon learned defendant had hired attorney Richard D. Frazier. Although Harmon's office made "numerous attempts" to reach Frazier, it was unable to do so; thus, Harmon requested a continuance to ascertain "the exact nature of the attorney-client relationship in this matter." Harmon did not attach an affidavit to his motion.

¶ 12     Harmon, defendant, and the State appeared before the trial court on the June 11, 2012, trial call. Noting it had received Harmon's motion, the court asked Harmon whether he wished to add anything to his written motion. Harmon explained to the court, Frazier indicated, due to a scheduling conflict, he would be willing to try defendant's case only if the case was continued. According to Harmon, defendant paid Frazier a retainer that Frazier deposited in a trust account "late last week." Harmon went on to indicate, Frazier "put conditions on his employment, and the condition were [*sic*] we had to come over here and basically beg the Court for a continuance."

¶ 13     Harmon asserted if the trial court chose to deny the motion for continuance, he was ready to try defendant's case, which he described as "rather uncomplicated." He noted defendant stated for the first time on June 11, 2012, that Frazier was "definitely" his choice. Harmon filed the motion to continue to allow the trial court to decide whether the motion was timely and let the prosecutor "weigh in" on the motion.

¶ 14     The prosecutor objected to the motion, arguing it was untimely. The prosecutor indicated

she spoke to Frazier a few days earlier, and Frazier told her he received money for a retainer Thursday night but he was not going to enter his appearance unless the case was continued because he had a scheduling conflict during the scheduled trial week. According to the prosecutor, defendant was "playing some kind of games" to try to get his case continued.

¶ 15 The trial court denied the motion for continuance, stating as follows:

"This is not a timely motion. You don't come in the morning of juries and file a motion for a continuance because you just decided [the] Friday before that you wanted a different attorney. And I don't know whether it's game playing or not, but it's certainly last-minute, not fair to anyone, and if I didn't have another case, I mean, and I would grant your motion, I'd have 55 Schuyler County citizens out here who want to be anywhere in the world but here. They want to be at their jobs, with their families, whatever, but they're going to be inconvenienced and come here and do their civic duty. And you know, we just don't inconvenience them in this way. So I'm perfectly willing, you know, attorneys get in and out of cases all the time, and I have no problem with that at all. I've tried cases with Mr. Frazier, tried cases with Mr. Harmon. They're both excellent attorneys. But we don't do motions to continue on the morning of the jury trial."

The court also agreed if Frazier was "going to get in this case, he should have been here this morning making the Motion to Continue."

¶ 16 Harmon and defendant then engaged in an off-the-record discussion, after which Harmon stated to the court, "Judge, I think Mr. Frazier told my client that he needs to make a statement about his desire to express to the Court that he wants to retain Mr. Frazier as his lawyer." The trial court responded it was "not going to accept any *pro se* statement by a defendant who is here represented by counsel." The court confirmed defendant's trial would likely commence that week.

¶ 17 B. Defendant's Jury Trial

¶ 18 1. *Voir Dire*

¶ 19 On June 12, 2012, defendant's jury trial commenced. During *voir dire*, the trial court explained it was going to ask the jury "a series of questions and propositions of law" and ask the jurors if they agreed or disagreed with those propositions. Thereafter, the court stated as follows: (1) "Do you understand the presumption of innocence?"; (2) "That is, that the defendant is presumed innocent until and unless proven guilty beyond a reasonable doubt"; (3) "The defendant is not required to prove his innocence"; (4) "Do you understand that it is the burden of the State to prove guilt beyond a reasonable doubt?"; (5) "If the State fails to prove guilt beyond a reasonable doubt, you must enter a verdict of not guilty"; (6) "You must remember that the defendant is not required to testify, to call any witness, or present any evidence"; (7) "The presumption of innocence remains with the defendant throughout the course of the trial and is not overcome unless, after listening to all the evidence and retiring to the jury room, you have determined that the State has met its burden of proof of guilt beyond reasonable doubt"; (8) "Do you understand that the defendant in a criminal case has an absolute right guaranteed by the Constitution of the United States not to testify?"; and (9) "[T]hat if a defendant does not testify that is in no way any indication of guilt or that

his failure to testify cannot be held against him in any way." The court then asked each juror individually if he or she agreed or disagreed with those propositions, and all of the jurors indicated they agreed.

### 2. *Opening Statements*

The parties then delivered opening statements. Defense counsel's opening statement did not address the substantive issues of the case and was able to be transcribed in less than two pages. Remarking on the State's opening statement, defense counsel asked, "if that's all that there is to this case, why are we here?" Defense counsel then answered, "Because there's more to this case. And you need to listen very closely to everything that you're going to be hearing, and you need to watch very closely to everything you're going to be seeing."

### 3. *The Evidence Presented at Trial*

Rushville police officer Bill Thompson testified on January 28, 2012, at around 1 a.m., he was on patrol, driving on Clinton Street, when a red, full-sized pickup truck turned from South Congress Street onto Clinton. Defendant, who was identified as the driver of the truck, cut across the centerline, completely into Thompson's lane. Thompson swerved into a yard, at which point defendant's truck swerved back into its lane and continued on Clinton.

Thompson made a U-turn and followed the truck, which crossed the centerline approximately five more times. As he followed the truck, Thompson observed the truck's registration was expired. Thompson activated his lights, but defendant continued driving, turning northbound on Highway 67. Thompson contacted dispatch and another on-duty officer, Officer Chris Edwards, to report the vehicle did not appear to be stopping. Thompson then activated his audible siren, but defendant did not stop, instead making a right turn onto Lafayette Street. Immediately thereafter, defendant turned into a parking lot at the Green Gables Motel, and Thompson followed. Edwards arrived at the motel around the same time.

Thompson asked defendant to provide his license, registration, and insurance information. After looking through the console of his truck, defendant indicated he could not find his registration or insurance. Thompson told defendant the documents were normally in the glove box, at which point defendant opened the glove box and "dug through a few papers." According to Thompson, defendant acted "uncoordinated," and his speech was slurred and slow. Thompson and Edwards could also detect the smell of alcohol on defendant's breath. Defendant stated he did not have his registration or insurance.

Thompson left defendant in the truck and ran defendant's driver's license information through dispatch. Edwards "took over from there," initiating a DUI investigation of defendant.

On cross-examination, Thompson acknowledged on the date of defendant's traffic stop he was not a certified police officer. Thompson testified such certification was not required by state law. Thompson also acknowledged he failed to include in his report the following details: (1) he drove into a yard to avoid defendant's pickup truck, and (2) defendant made a statement to Edwards. Likewise, Thompson's report indicated only that defendant crossed

the centerline "multiple times," not five times, and did not detail how much of defendant's vehicle crossed the line or near which landmarks the vehicle swerved.

¶ 28 Chris Edwards, a police officer with the Rushville police department, testified on January 28, 2012, he responded to Thompson's call for assistance. Prior to that date, Edwards had made six or seven DUI arrests. When he arrived at the Green Gables Motel, Edwards exited his car and approached the passenger side of defendant's truck. Edwards observed defendant acting "confused," having difficulty opening the papers he had removed from his glove box. When he spoke to defendant, Edwards could smell "a strong odor of alcohol coming off of [defendant's] breath" and noticed defendant's eyes were glassy.

¶ 29 Edwards testified he asked defendant where he had been that night, and defendant indicated he was coming from a local bar. Defendant said he had been drinking but did not know how much alcohol he had consumed. Edwards asked defendant to exit his vehicle, and defendant complied. As he stood, defendant swayed "back and forth, side to side." Edwards asked defendant to submit to field sobriety tests, but defendant said he would "rather not." At that point Edwards placed defendant under arrest. Edwards opined defendant was under the influence of alcohol based on (1) Thompson's observations before stopping defendant, (2) the smell of alcohol on defendant's breath, and (3) defendant's glassy eyes, slurred speech, and difficulty standing still.

¶ 30 Edwards transported defendant to the booking room at the Schuyler County jail, where Edwards filled out defendant's DUI citation and read defendant the warning to motorist. Defendant fell asleep multiple times and Edwards had to awaken him by shaking his leg. Edwards then conducted a 20-minute observation of defendant. Defendant acted "very talkative," starting one story but neglecting to finish it before starting another story. Defendant's speech was "still slurred."

¶ 31 On cross-examination, Edwards testified the truck defendant was driving was registered to defendant's employer, J Curry Redi-Mix. Edwards acknowledged the possibility that defendant's difficulty retrieving papers could have been attributed to the fact the vehicle was not registered to defendant. Edwards also acknowledged it was approximately 1 a.m. when he and defendant were in the booking room.

¶ 32 During its case in chief, defense counsel recalled Edwards, who testified the weather was cold, wet, and snowy on the day Thompson arrested defendant. Defendant did not testify.

¶ 33 4. *Closing Arguments*

¶ 34 The trial then proceeded to closing arguments. During the State's rebuttal, the prosecutor made the following remarks:

"That doesn't make sense. That doesn't make sense. Well, that just doesn't make sense. How many times did we just hear that from [defense counsel]? It doesn't make sense. Well, I'm going to ask you. The one thing that kind of screams out at me as I listen to all that, does it make any sense whatsoever that Officer Thompson is going to come into this courtroom and describe what the defendant drove like on Clinton Street to the stop, and he's going to make up the whole story about the vehicle coming into his lane of traffic and crossing over the center line and make up everything as counsel is implying and

suggesting because I'm asking what sense does that make? Why? What's in it for him? You heard the testimony. He doesn't even know Mr. Curry, didn't know him before then.

\* \* \*

But yet on January 28th, out of the blue, he's just going to start saying, hum, there's a truck, I think I'll just say that truck came in and made that turn and almost hit me. And then I'm going to say I followed him, and he crossed the center line multiple times. And then I'm going to turn, and I'm going to follow him and I'm going to say he didn't pull over. And I'm going to say I turned the siren on, and he still didn't pull over. And I'm going to follow him to the motel, and I'm going to say what my observations were, but none of it happened. Why? Did you hear any evidence whatsoever to suggest any motive, any interest, any bias, any prejudice Officer Thompson has against this defendant that would make him come in here and just make all that up? No, you didn't.

\* \* \*

But, more importantly, why would Officer Thompson be saying all this happened if it didn't happen?"

¶ 35    The prosecutor also stated as follows:

"Now, [defense counsel] also then goes on to say, where's the tape? You know there's a video in the booking room. Why didn't we see that tape of him sleeping and him snoring and the officer hitting his leg and waking him up? What's that going to prove? We could all have sat here for 20 minutes for the 20-minute observation period and the time it took to read it. And we could have stared at a screen and watched the defendant sleep and snore and been woke[n] up. And how would that have helped you to decide whether or not he was under the influence of alcohol? But I guarantee you this: [defense counsel is] right. He doesn't have to prove anything, doesn't have the burden of proof. But, guess what, he wants you to believe that that tape showed you things that the officer said–that that tape says things that the officer, would prove the officer those things didn't happen. I guarantee you if that tape showed you that the defendant wasn't sleeping, didn't have to be woke[n] up, you would have saw [*sic*] it here in the courtroom, and he would have played it for you."

¶ 36    The prosecutor later made the following comments:

"Counsel says I told you at the beginning that if it was all just one way we won't [*sic*] wouldn't be here, and yet he's conceding here at the end, well, one of those counts there's no question he's guilty, you know, expired registration; he's guilty. Then why are we here about that? Where's the other side of that story, if that's conceded now at the end of the case?"

¶ 37    5. *The Jury's Deliberations*

¶ 38    At 5:05 p.m., the jury retired to deliberate. At 6:30, one of the jurors sent a note saying, "There is very strong feelings both ways." Defendant was not present when the trial court addressed the note, and defense counsel waived his presence. Once on the record, the trial court noted the attorneys had engaged in an off-the-record discussion and then asked the

prosecutor and defense counsel whether the court should send back a note "simply stating the jury should continue their deliberations." The attorneys agreed. Ten minutes later, the jury indicated it had reached a verdict. The jury found defendant guilty of operating a motor vehicle with an expired registration, improper lane usage, and DUI.

¶ 39                    C. Defendant's Posttrial Motions and Sentencing Hearing

¶ 40    In July 2012, Frazier and Harmon filed a motion for substitution of attorneys, seeking to allow Harmon to withdraw as counsel for defendant and to substitute Frazier as counsel. The trial court allowed counsels' motion.

¶ 41    Later that month, Frazier filed a posttrial motion, arguing, among other things, defendant was entitled to a new trial because (1) defendant was denied his sixth amendment right to counsel of choice; (2) the trial court improperly instructed the jury to "keep working" when the jury informed the court it had strong opinions both ways; (3) the court erred by failing to ascertain whether all potential jurors understood and accepted the principles espoused in *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984); (4) the prosecutor committed reversible error during closing by (a) arguing defendant should have introduced evidence to rebut the arresting officers' testimony that defendant fell asleep at the county jail, (b) implying Thompson had no motivation to testify falsely, and (c) highlighting defendant's failure to testify by stating, "where is the other side of that story," and (5) defense counsel was ineffective for failing to raise objections during *voir dire* and closing argument and failing to "deliver a meaningful or substantive opening statement."

¶ 42    At an August 2012 hearing, the trial court denied defendant's posttrial motion and the matter proceeded to sentencing. The court admitted into evidence a certified copy of defendant's driving abstract. Both defendant's driving abstract and presentence investigation report showed defendant had three prior DUI convictions. The court entered judgment on aggravated DUI, driving with an expired registration, and improper lane usage. The court sentenced defendant to four years in the Illinois Department of Corrections on the aggravated DUI charge and ordered him to pay $120 on each traffic matter along with various mandatory assessments.

¶ 43    Defendant filed a notice of appeal, and this court docketed defendant's aggravated DUI case as case No. 4-12-0724, his expired registration case as No. 4-12-0725, and his improper lane usage case as No. 4-12-0726. We consolidated defendant's cases on appeal.

¶ 44                                II. ANALYSIS

¶ 45    On appeal, defendant asserts (1) the trial court abused its discretion by denying him his right to counsel of choice, (2) the court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) during *voir dire*, (3) the State committed reversible error by making several improper remarks during closing argument, (4) the court erred by instructing the jury to continue deliberating after the jury indicated it had reached an impasse, and (5) defendant received ineffective assistance of trial counsel. We address defendant's assertions in turn.

¶ 46                          A. Whether The Trial Court Denied Defendant
                                      His Counsel of Choice

¶ 47        Defendant contends the trial court denied him his sixth amendment right to retain his
counsel of choice by denying defendant's request for a continuance. Specifically, defendant
claims he unequivocally stated he did not want Harmon to represent him, and nothing
indicated defendant sought a continuance in an attempt to manipulate the court system. In
support of his contention the trial court should have granted his motion to continue,
defendant cites *People v. Bingham*, 364 Ill. App. 3d 642, 847 N.E.2d 903 (2006), *People v.
Childress*, 276 Ill. App. 3d 402, 657 N.E.2d 1180 (1995), and *People v. Little*, 207 Ill. App.
3d 720, 566 N.E.2d 365 (1990).

¶ 48        A criminal defendant's right to counsel of choice is constitutionally protected. *People v.
Staple*, 402 Ill. App. 3d 1098, 1103, 932 N.E.2d 1064, 1068 (2010). However, a defendant
may not employ this right "as a weapon" to "thwart the administration of justice or to
otherwise embarrass the effective prosecution of crime." *People v. Friedman*, 79 Ill. 2d 341,
349, 403 N.E.2d 229, 234 (1980). Thus, a court must balance the right of a defendant to
choose his or her counsel against the need for efficient and effective administration of justice.
*Bingham*, 364 Ill. App. 3d at 645, 847 N.E.2d at 907.

¶ 49        The decision to grant or deny a continuance for substitution of counsel is a matter left to
the discretion of the trial court and will not be overturned absent an abuse of that discretion.
*People v. Segoviano*, 189 Ill. 2d 228, 245, 725 N.E.2d 1275, 1283 (2000). Factors to consider
in evaluating a trial court's exercise of its discretion include the diligence of the movant, the
right of the defendant to a speedy, fair, and impartial trial, and the interests of justice.
*Segoviano*, 189 Ill. 2d at 245, 725 N.E.2d at 1283. A trial court does not abuse its discretion
by denying a motion for substitution of counsel "where new counsel is unidentified or does
not stand ready, willing, and able to make an unconditional entry of appearance on
defendant's behalf." *Childress*, 276 Ill. App. 3d at 411, 657 N.E.2d at 1186.

¶ 50        In *Bingham*, 364 Ill. App. 3d at 644, 847 N.E.2d at 906, the defendant made a motion to
continue to obtain new counsel, indicating he sought to be represented by out-of-town
counsel Earl Washington, who was representing the defendant in other pending matters. At
a hearing on the motion, the prosecutor indicated he received " 'a palm message late
yesterday afternoon from Mr. Washington' " and was " 'most anxious to proceed in this
matter.' " *Bingham*, 364 Ill. App. 3d at 644, 847 N.E.2d at 906. Without inquiring further,
the trial court denied the motion. *Bingham*, 364 Ill. App. 3d at 644, 847 N.E.2d at 906. On
appeal, this court reversed, concluding the trial court violated the defendant's right to choice
of counsel by erroneously denying the defendant's motion for continuance without
conducting an adequate inquiry into the defendant's request. *Bingham*, 364 Ill. App. 3d at
644, 847 N.E.2d at 906. We noted (1) the attorney the defendant sought to be represented by
contacted the assistant State's Attorney the previous day, (2) the case progressed quickly and
had been pending only three months, (3) the defendant had not filed any prior continuances
or made any pretrial motions, and (4) the record did not indicate the defendant made any
prior attempts to delay the proceedings or the purpose of the defendant's request was

dilatory. *Bingham*, 364 Ill. App. 3d at 645, 847 N.E.2d at 907.

¶ 51    Defendant's reliance on *Bingham* is unpersuasive. Our decision in that case turned on the trial court's failure to conduct an inquiry into the circumstances and purposes of the defendant's motion. As we explained in *People v. Montgomery*, 373 Ill. App. 3d 1104, 1111, 872 N.E.2d 403, 410 (2007), "*Bingham* should be understood as concluding, *under the particular circumstances of that case*, that an inquiry by the trial court might well have disclosed that the attorney the defendant identified by name (whose involvement in the case the prosecutor corroborated) would, in fact, be 'ready and willing' substitute counsel." (Emphasis added.) *Bingham* did not, however, modify our long-standing rule that a trial court does not abuse its discretion by denying a defendant's motion for continuance where new counsel does not stand "ready, willing and able to make an unconditional entry of appearance instanter." *People v. Koss*, 52 Ill. App. 3d 605, 607-08, 367 N.E.2d 1040, 1041 (1977). Here, the court correctly inquired of counsel to determine the factual basis surrounding the request for a continuance. Thus, where a trial court conducts an inquiry into the circumstances of a defendant's motion, and those circumstances demonstrate substitute counsel does not stand "ready, willing, and able to make an unconditional entry of appearance" on defendant's behalf, a court does not abuse its discretion by denying a defendant's motion for continuance to obtain substitute counsel.

¶ 52    In defendant's case, the trial court conducted an inquiry into defendant's motion for continuance, allowing Harmon to orally supplement his motion and providing the prosecutor an opportunity to respond. The court's inquiry revealed defendant had paid Frazier a retainer and Frazier had contacted the prosecutor a few days earlier; however, Frazier would not enter an appearance unless the case was continued. Thus, the facts revealed the absence of new counsel who stood "ready, willing, and able to make an *unconditional* entry of appearance on defendant's behalf." (Emphasis added.) *Childress*, 276 Ill. App. 3d at 411, 657 N.E.2d at 1186. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for continuance.

¶ 53    Defendant contends the trial court's inquiry was inadequate because the court relied on the representations of Harmon, who "was advocating his own interests" and not those of defendant. We disagree. Although Harmon stated to the court defendant's case was "rather uncomplicated" and he was ready to proceed, we note Harmon also explained to the court that defendant (1) contacted his office at the beginning of June about changing counsel, (2) told Harmon that Frazier was "definitely" his choice of counsel, and (3) paid a retainer to Frazier. Thus, the record does not reveal defense counsel was advocating against defendant's interests.

¶ 54    Defendant also cites *Childress* in support of his claim the trial court abused its discretion. *Childress* is unpersuasive, however, because there, private counsel appeared on the day the defendant's case was set for trial, requesting to file an appearance on the defendant's behalf and also requesting a continuance because he was unaware defendant's trial was scheduled for that day. *Childress*, 276 Ill. App. 3d at 410, 657 N.E.2d at 1186. Here, Frazier did not appear in court, and Frazier specifically conditioned his willingness to file an appearance on defendant's behalf on defendant's case being continued. The trial court specifically noted if Frazier sought to represent defendant, he should have appeared in court to make the motion

-10-

to continue.

¶ 55 Likewise, *Little*, 207 Ill. App. 3d 720, 566 N.E.2d 365, is also distinguishable. In *Little*, the trial court conducted no inquiry into the defendant's claim he had retained private counsel, nor did the court inquire as to the length of continuance the defendant was requesting. *Little*, 207 Ill. App. 3d at 727, 566 N.E.2d at 369. In finding the trial court abused its discretion, the First District also pointed out (1) the defendant was in custody during the five-month period leading up to his trial and thus was compelled to rely on his family to obtain private counsel, (2) the defendant had not previously requested a continuance, and (3) "[t]he fact that defendant was incarcerated" and charged with a nonviolent crime militated against the notion he sought a continuance to delay trial. *Little*, 207 Ill. App. 3d at 727, 566 N.E.2d at 369. Moreover, although counsel who had been hired by defendant's family was not present, the public defender indicated the defendant's family had given new counsel the wrong court date. *Little*, 207 Ill. App. 3d at 722-23, 566 N.E.2d at 366.

¶ 56 Here, defendant posted bond on January 28, 2012, and remained out of custody for the period leading up to his trial. Nonetheless, defendant did not alert Harmon about hiring new counsel until May 30, 2012. In light of the foregoing, the trial court's denial of defendant's motion was not unreasonable.

¶ 57 " '[A] court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it.' " *Staple*, 402 Ill. App. 3d at 1102-03, 932 N.E.2d at 1068 (quoting *People v. Ortega*, 209 Ill. 2d 354, 359, 808 N.E.2d 496, 500-01 (2004)). In light of the fact defendant, who was not incarcerated, did not file a motion for continuance until the day of trial, and defendant's choice of counsel, Frazier, was not present and conditioned his representation of defendant on the court continuing defendant's case, the trial court's decision to deny defendant's motion for continuance was not "fanciful, arbitrary, or unreasonable."

¶ 58 B. Defendant's Contentions of Error With Respect to *Voir Dire*

¶ 59 Defendant next argues the trial court's method of *voir dire* failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). The State responds defendant has forfeited his contentions relating to *voir dire* by failing to object at trial, and defendant has not shown (1) clear or obvious error occurred or (2) the trial court's admonishments constituted plain error. We conclude, although the court failed to comply with Rule 431(b), the court's improper admonishments did not rise to the level of plain error.

¶ 60 1. *The Court's Admonishments Were Improper*

¶ 61 Rule 431(b) provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charges against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the

-11-

defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

¶ 62 Defendant did not object to the trial court's *voir dire* questioning. Thus, defendant has forfeited his arguments related to *voir dire*, and we review defendant's contentions only for plain error. See *People v. Thompson*, 238 Ill. 2d 598, 611, 939 N.E.2d 403, 412 (2010) ("To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion."). The plain-error rule allows a reviewing court to consider unpreserved claims of error when a clear or obvious error occurred and either (1) the evidence is so closely balanced the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Wilmington*, 2013 IL 112938, ¶ 31, 983 N.E.2d 1015. The burden of persuasion rests with the defendant. *Thompson*, 238 Ill. 2d at 613, 939 N.E.2d at 413. The first step of plain-error review is to determine whether error occurred. *Id.*

¶ 63 Here, before addressing the principles in Rule 431(b), the trial judge told the jurors she would go through a series of questions and propositions of law and then would ask jurors if they agree or disagree with the propositions. The court then stated the following: (1) "Do you understand the presumption of innocence?"; (2) "That is, that the defendant is presumed innocent until and unless proven guilty beyond a reasonable doubt"; (3) "The defendant is not required to prove his innocence"; (4) "Do you understand that it is the burden of the State to prove guilt beyond a reasonable doubt?"; (5) "If the State fails to prove guilt beyond a reasonable doubt, you must enter a verdict of not guilty"; (6) "You must remember that the defendant is not required to testify, to call any witness, or present any evidence"; (7) "The presumption of innocence remains with the defendant throughout the course of the trial and is not overcome unless, after listening to all the evidence and retiring to the jury room, you have determined that the State has met its burden of proof of guilt beyond a reasonable doubt"; (8) "Do you understand that the defendant in a criminal case has an absolute right guaranteed by the Constitution of the United States not to testify?"; and (9) "[T]hat if a defendant does not testify that is in no way any indication of guilt or that his failure to testify cannot be held against him in any way." The trial court then asked each individual juror if he or she agreed or disagreed with those propositions, and each juror indicated he or she agreed.

¶ 64 Defendant argues the trial court erred by failing to ask each juror whether he or she "understood" and "accepted" the four Rule 431(b) principles. We are aware of the decision in *People v. Blankenship*, 406 Ill. App. 3d 578, 583, 943 N.E.2d 1111, 1116 (2010), in which the Second District concluded the trial court satisfied the requirements of Rule 431(b) by asking each juror whether he or she " 'agree[d] with' " the Rule 431(b) principles. However, we believe in *Thompson* and *Wilmington*, the Illinois Supreme Court has made clear strict

compliance with Rule 431(b) is required in that the trial court must ask each juror, individually or as a group, whether he or she "understands" *and* "accepts" the principles and provide each juror an opportunity to respond. Specifically, we note in *Wilmington*, the supreme court stated as follows:

> "Rule 431(b) requires that the trial court ask potential jurors whether they *understand* and *accept* the enumerated principles, mandating 'a specific question and response process.' [Citation.] While it may be arguable that the court's asking for disagreement, and getting none, is equivalent to juror *acceptance* of the principles, the trial court's failure to ask jurors if they *understood* the four Rule 431(b) principles is error in and of itself." (Emphases in original.) *Wilmington*, 2013 IL 112938, ¶ 32, 983 N.E.2d 1015.

¶ 65    Here, in its initial recitation and explanation of the four principles set forth in Rule 431(b), the trial court stated the words "do you understand," but never gave each individual juror an opportunity to respond to that question. Instead, the court then asked each individual juror if he or she agreed or disagreed with the propositions the court had recited. Accordingly, we conclude the court committed a clear or obvious error by failing to provide a method of inquiry that provided each juror an opportunity to respond to the question "do you understand" the Rule 431(b) principles and failing to ask and provide each juror an opportunity to respond to the question "do you accept" the Rule 431(b) principles. We make the following suggestion regarding compliance with Rule 431(b). Indicate to the potential jurors the court will go over some principles of law to ensure they understand and accept the principles of law. Thereafter, read verbatim the four principles outlined in Rule 431(b). Then, ask jurors individually or as a group whether they understand and accept the principles, giving each juror an opportunity to respond in a manner that ensures his or her understanding and acceptance or lack thereof, is a matter of record.

¶ 66              2. *The Admonishments Did Not Constitute Plain Error*

¶ 67    Having concluded the trial court's admonishments were improper, we now consider whether reversal is warranted pursuant to the plain-error doctrine.

¶ 68    Here, defendant argues plain error only under the first prong of the plain-error doctrine, contending the evidence in this case was closely balanced. We disagree. At trial, Thompson testified he witnessed defendant, driving a pickup truck, cut across the centerline, swerve into a yard, and fail to stop, even after Thompson activated his lights and his audible siren. When Thompson spoke to defendant, he noticed defendant acted uncoordinated, with slow and slurred speech. Likewise, Edwards observed defendant acting "confused," and both Thompson and Edwards detected alcohol on defendant's breath. Defendant refused to submit to field sobriety tests, and when Edwards transported defendant to the Schuyler County jail, defendant told disjointed stories and fell asleep multiple times.

¶ 69    Defendant points out several weaknesses in the State's evidence. Specifically, defendant emphasizes (1) Thompson's sworn report did not contain all of the details of his testimony; (2) the weather conditions on the day of defendant's traffic stop were cold, wet, and snowy; (3) defendant was able to exit his vehicle without trouble; (4) Edwards had only made six or seven DUI stops; and (5) the State did not introduce a video or audio recording of

defendant's stop and arrest or the time defendant spent in the Schuyler County jail booking room. The aforementioned weaknesses in the State's case do not lead us to conclude the evidence here was closely balanced.

¶ 70    Defendant also argues the jury's note, which stated there were "very strong feelings both ways," indicated the evidence at trial was closely balanced. We disagree. Prior to sending the note, the jury had only been deliberating for approximately 1 1/2 hours, and approximately 10 minutes after being instructed by the court to "continue deliberating," the jury reached a verdict. "Careful consideration of the evidence adduced and exhibits admitted is what we expect of jurors in any trial." *Wilmington*, 2013 IL 112938, ¶ 35, 983 N.E.2d 1015. The jury's note does not show the evidence at trial was closely balanced. Accordingly, defendant has failed to show reversal is warranted pursuant to the first prong of the plain-error doctrine.

¶ 71             C. Whether the Prosecutor's Closing Arguments Were Improper

¶ 72    Defendant next contends the State committed reversible error by making improper remarks during closing argument. Defendant also claims the State's comments amounted to cumulative error. Defendant acknowledges he has forfeited review of the errors by failing to contemporaneously object to the prosecutor's remarks but urges this court to review the arguments for plain error.

¶ 73    Prosecutors are afforded wide latitude in closing argument and may comment on the evidence and any fair, reasonable inferences it yields. *People v. Nicholas*, 218 Ill. 2d 104, 121, 842 N.E.2d 674, 685 (2005). A defendant cannot ordinarily claim error where the prosecutor's statements are invited or provoked by the defendant's argument. *People v. Glasper*, 234 Ill. 2d 173, 204, 917 N.E.2d 401, 420 (2009). Moreover, "[a] closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context." *Nicholas*, 218 Ill. 2d at 122, 842 N.E.2d at 685.

¶ 74    The plain-error doctrine allows a reviewing court to consider unpreserved error when (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65, 870 N.E.2d 403, 410 (2007). Our first step is to determine whether error occurred. *Piatkowski*, 225 Ill. 2d at 565, 870 N.E.2d at 411.

¶ 75             1. *Whether the State Improperly Referenced*
                    *Defendant's Failure To Testify*

¶ 76    Defendant first argues the prosecutor improperly remarked on defendant's failure to testify. The test for determining whether a defendant's right to remain silent has been violated by a prosecutor's comments is whether the comments were "intended or calculated to direct the attention of the jury to the defendant's" failure to testify. (Internal quotation marks omitted.) *People v. Dixon*, 91 Ill. 2d 346, 350, 438 N.E.2d 180, 182-83 (1982). Defendant alleges the following remarks constituted improper commentary:

    "Counsel says I told you at the beginning that if it was all just one way we won't [*sic*] wouldn't be here, and yet he's conceding here at the end, well, one of those counts

-14-

there's no question he's guilty, you know, expired registration; he's guilty. Then why are we here about that? Where's the other side of that story, if that's conceded now at the end of the case?"

¶ 77   However, as the State points out, defense counsel, remarking on the prosecutor's opening statement, made the following comments during his opening, "if that's all that there is to this case, why are we here? Because there's more to this case." Later, during closing, defense counsel requested acquittals on only two of the three charges, stating defendant was "absolutely guilty of" driving with an expired registration. Thus, viewed in the context of defense counsel's opening and closing statements, we conclude the prosecutor's "Where's the other side of the story" remark was a comment on defendant's concession of guilt on his expired registration charge, in spite of and inconsistent with defense counsel's opening remarks. Accordingly, we conclude the arguments were not improper and were invited by defense counsel's argument.

¶ 78                    2. *Whether the State Attempted To Shift*
                        *the Burden of Proof to Defendant*

¶ 79   Defendant next posits the prosecutor improperly attempted to shift the burden of proof to defendant when the prosecutor, in reference to the absence of the tape from defendant's 20-minute observation period, stated, "I guarantee you if that tape showed you that the defendant wasn't sleeping, didn't have to be woke[n] up, you would have saw [*sic*] it here in the courtroom, and he would have played it for you."

¶ 80   "The defense is under no obligation to produce any evidence, and the prosecution cannot attempt to shift the burden of proof to the defense." *People v. Beasley*, 384 Ill. App. 3d 1039, 1047-48, 893 N.E.2d 1032, 1039 (2008). However, a prosecutor may respond to comments by defense counsel that clearly invite a response. *People v. Kliner*, 185 Ill. 2d 81, 154, 705 N.E.2d 850, 887 (1998). Moreover, a prosecutor is permitted to comment on a defendant's failure to produce evidence where a defendant with equal access to the evidence assails the prosecutor's failure to produce that evidence. *People v. Jackson*, 399 Ill. App. 3d 314, 319, 926 N.E.2d 786, 791 (2010).

¶ 81   In *People v. Brown*, 172 Ill. 2d 1, 43, 665 N.E.2d 1290, 1309 (1996), defense counsel argued the testimony of the murder victim's mother was not credible, asking " '[w]here is anybody' " to testify the mother and the victim were on good terms. In rebuttal, the prosecutor stated, " '[i]f there was anybody in the world that could describe the relationship between those two women *** you can be sure the defense would have had the people up on the stand.' " *Brown*, 172 Ill. 2d at 42, 665 N.E.2d at 1309. The supreme court found the prosecutor's statement was invited by defense counsel and thus defense counsel could not argue on appeal the statement was erroneous. *Brown*, 172 Ill. 2d at 43, 665 N.E.2d at 1309.

¶ 82   Here, Edwards testified defendant fell asleep in the booking room and Edwards had to awaken defendant by shaking his leg. On cross-examination, Edwards acknowledged the booking area was under a 24-hour recorded video surveillance. During defense counsel's closing, counsel stated, "There's a tape. Where's the tape? We didn't get to see a tape. We don't have the burden of proof here, folks. The State has the burden of proof. If it's really as

egregious as they're wanting you to believe, then where's the tape? Why don't we get to see if [defendant is] nodding off? Why don't we get to hear if he's snoring?" Thus, like the prosecutor's comments in *Brown*, the prosecutor's comments here were invited by defense counsel and were not improper.

¶ 83                    3. *Whether the State Improperly Vouched*
                              *for Thompson's Credibility*

¶ 84    Defendant also asserts the prosecutor improperly vouched for Thompson's credibility when the prosecutor questioned why Thompson would lie. However, we do not construe the prosecutor's argument as expressing her personal belief in Thompson's credibility; rather, the prosecutor's commentary highlighted Thompson's lack of bias or motive to testify untruthfully. Such argument is proper. See *People v. Shum*, 117 Ill. 2d 317, 348-50, 512 N.E.2d 1183, 1194-95 (1987) (concluding prosecutor's comment on the victim's lack of motive to lie about her attacker was an inference fairly drawn from the evidence produced concerning her relationship with the attacker.).

¶ 85    Based on the foregoing, we conclude the prosecutor's closing arguments were not improper. In addition, because none of the prosecutor's comments were erroneous, defendant has failed to show the cumulative effect of these comments deprived defendant of a fair trial. See *People v. Ligon*, 365 Ill. App. 3d 109, 125, 847 N.E.2d 763, 778 (2006) ("Having determined that none of the closing comments objected to by defendant were erroneous, we find that defendant's contention that he was denied a fair trial by the cumulative effect of the comment is also without merit.").

¶ 86                    D. Whether the Trial Court Erred by Instructing
                              the Jury To Continue Deliberating

¶ 87    Defendant next posits the trial court erred by failing to give a *Prim* instruction when the jury sent a note indicating, "There is very strong feelings both ways." See *People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601 (1972). The State responds defendant invited the trial court's response to the jury and thus defendant has waived any challenge to the response on appeal. We agree with the State.

¶ 88    The doctrine of invited error prohibits a defendant from requesting to proceed in one manner and then later contending on appeal that the course of action was in error. *People v. Carter*, 208 Ill. 2d 309, 319, 802 N.E.2d 1185, 1190 (2003). In this case, the trial court, upon receiving the juror's note, stated, "Counsel, we have discussed this before we went on the record. Is it your desire that I send a response back just simply stating the jury should continue their deliberations?" Counsel replied, "Yes." Thus, defense counsel affirmatively acquiesced to the court's instruction, and under the invited error doctrine, defendant cannot object to the instruction on appeal. See *People v. Pryor*, 372 Ill. App. 3d 422, 432-33, 865 N.E.2d 279, 289 (2007) (concluding the defendant could not complain about the trial court's response to the jury's question where the defendant acquiesced by failing to object to the proposed response).

-16-

¶ 89    Defendant argues that, because he was not present when the trial court developed its proposed response, the doctrine of invited error does not apply to defendant's case. However, as we stated in *People v. Bowens*, 407 Ill. App. 3d 1094, 1101, 943 N.E.2d 1249, 1258 (2011), "[i]n a situation like this, where defense counsel affirmatively acquiesces to actions taken by the trial court, a defendant's only challenge may be presented as a claim for ineffective assistance of counsel." We note defendant asserts for the first time in his reply brief that defense counsel was ineffective for failing to object to the court's response to the note from the jury. However, "[i]ssues or arguments that a party fails to raise in its initial brief cannot later be raised in a reply brief." *People v. Sparks*, 315 Ill. App. 3d 786, 790, 734 N.E.2d 216, 220 (2000). Accordingly, we will not address defendant's claim counsel was ineffective for failing to object to the court's response to the jury's note.

¶ 90                          E. Whether Defendant Received Ineffective
                                        Assistance of Counsel

¶ 91    Finally, defendant asserts he received ineffective assistance of trial counsel because counsel failed to (1) object during *voir dire*, (2) present a "substantive" opening statement, and (3) object during the prosecution's closing argument. We disagree.

¶ 92    Ineffective assistance of counsel claims are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Bew*, 228 Ill. 2d 122, 127, 886 N.E.2d 1002, 1005 (2008). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) defense counsel's performance was deficient, and (2) the defendant suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 687. More specifically, a defendant must show counsel's performance was objectively unreasonable under prevailing professional norms and a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Cathey*, 2012 IL 111746, ¶ 23, 965 N.E.2d 1109. We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action "might be considered sound trial strategy." (Internal quotation marks omitted.) *Strickland*, 466 U.S. at 689.

¶ 93    Here, defendant fails to show defense counsel was ineffective. First, although the trial court's Rule 431(b) admonishments were improper, defendant fails to establish he suffered prejudice as a result of trial counsel's failure to object to the improper admonishments. As the supreme court explained in *Thompson*, "failure to comply with Rule 431(b) does not necessarily result in a biased jury. Rule 431(b) questioning is simply one way of helping to ensure a fair and impartial jury." *Thompson*, 238 Ill. 2d at 610-11, 939 N.E.2d at 412. No evidence here suggests the jury was biased such that defendant suffered prejudice as a result of counsel's failure to object to the improper admonishments. Moreover, the evidence in this case was not closely balanced; accordingly, defendant has not demonstrated the outcome of his trial would have been different had counsel objected to the court's admonishments.

¶ 94    Defendant's contention that counsel was ineffective for failing to object to the State's closing arguments is also unpersuasive, as the State's comments were not improper.

¶ 95    Finally, defendant fails to overcome the presumption that defense counsel's brief opening statement was a matter of sound trial strategy. Defendant's citation to *People v. Lee*, 185 Ill. App. 3d 420, 541 N.E.2d 747 (1989), is unpersuasive because there, defendant's "case had been essentially tried before," so defense counsel "should have known both the strengths and weaknesses of the State's case." *Lee*, 185 Ill. App. 3d at 444, 541 N.E.2d at 761. Moreover, although the court reversed and remanded the defendant's case for a new trial, the *Lee* court specifically stated, "[w]e do not hold that each instance of ineffectiveness would warrant reversal." *Lee*, 185 Ill. App. 3d at 446, 448, 541 N.E.2d at 763-64.

¶ 96    Here, defendant did not testify, and defendant's evidence consisted only of Edwards' testimony as to the weather conditions on the night of defendant's arrest. Thus, it was not unreasonable for defense counsel to make a brief, nonsubstantive opening statement. See *People v. Foster*, 168 Ill. 2d 465, 482-83, 660 N.E.2d 951, 959 (1995) (concluding defense counsel's decision to waive opening statement was not unreasonable where defense presented no evidence).

¶ 97    Based on the foregoing, we conclude defendant was not denied the effective assistance of trial counsel.

¶ 98                                    III. CONCLUSION

¶ 99    For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory fee against defendant as costs of this appeal.

¶ 100    Affirmed.