NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250879-U

NOS. 4-25-0879, 4-25-0965 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 8, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McDonough County |
|     Petitioner-Appellee, | ) | No. 20JA21 |
|     v.    (No. 4-25-0879) | ) | |
| Jusef W., | ) | |
|     Respondent-Appellant). | ) | |
| | ) | |
| | ) | |
| *In re* K.W., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
|     Petitioner-Appellee, | ) | |
|     v.    (No. 4-25-0965) | ) | Honorable |
| Kyandrea L., | ) | Heidi A. Benson, |
|     Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding respondent parents were not denied due process in the termination of their parental rights to K.W.

¶ 2    Respondent parents, Jusef W. and Kyandrea L., appeal the trial court's order terminating their parental rights to K.W. (born December 2018). Respondents seek reversal of the termination order, arguing they were improperly admonished at the adjudicatory and dispositional hearings that the State could not terminate their parental rights. We affirm.

¶ 3                            I. BACKGROUND

¶ 4	On August 4, 2020, the State petitioned for the adjudication of wardship of K.W., asserting K.W. was a dependent minor. According to the petition, K.W. was a dependent minor under section 2-4(1)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/2-4(1)(a) (West 2020)). The State asserted K.W. lacked a parent, guardian, or legal custodian because respondent mother had been experiencing significant mental health issues resulting in three separate hospitalizations in 60 days, leaving K.W. without care. The State further asserted respondent father was imprisoned in the Illinois Department of Corrections and was not expected to be paroled until December 2025.

¶ 5	On August 20, 2020, the trial court told respondent mother, because the State filed a dependency petition, the State could not terminate her parental rights, stating:

> "So those are the allegations that the State is making about your daughter. They're not alleging that she's been abused or neglected. They're just alleging that right now she does not have a parent who is able to take care of her. It's important that you know that that's a distinction because when the State alleges a dependency, they can never terminate your parental rights. They can only terminate parental rights on abuse and neglect allegations."

¶ 6	On September 10, 2020, respondent mother admitted the allegations in the State's petition. The trial court adjudicated K.W. dependent.

¶ 7	The dispositional hearing was held on October 1, 2020. At that hearing, the trial court set the goal to "return home to mother within 12 months consistent with the health, safety and welfare of [K.W.]" The court ordered respondent mother to complete the client service plan

and cooperate with the Illinois Department of Children and Family Services (DCFS). The court emphasized the importance of complying with the plan. The court then repeated respondent mother did not risk the termination of her parental rights to K.W., stating:

> "Now I probably told you at the beginning but I want to tell you again. This is dependency, not neglect. And in dependency you do not risk termination of your parental rights. So not only is our goal to help you be the parent that [K.W.] deserves, right now, the way the case is, the State can't file a Petition to Terminate your rights."

The court continued by cautioning, "Now that could change if your participation in the case changes, but the way it is right now, they're not even legally allowed to do that. That's how committed we all are to you and [K.W.] being together."

¶ 8        A written dispositional order was entered. Guardianship was placed with DCFS.

¶ 9        At the March 25, 2021, permanency review hearing, the goal remained the same. The State noted respondent mother was cooperative and participating. The State was concerned there was a "period of time" when no one knew where respondent mother was, causing "really significant concern on the family's part and the agency's." The State, noting "it's fairly close," asked the trial court to find reasonable progress and efforts.

¶ 10       The trial court agreed with the State and retained the goal of return home in 12 months, but it cautioned respondent mother the State could seek to terminate her parental rights, stating:

> "Now, you've been working really well with your social worker and we appreciate that. But I do have to give you the

admonishment that if you don't correct the conditions that brought [K.W.] into care, we could terminate your parental rights. At this point nobody's talking about that. Everybody's talking about returning [K.W.] to your care, so that's not where the case is, but because it's permanency review, I do have to give you that admonishment, that *** if you change course, I guess, and don't work on the conditions that brought her into care, then the State could change its mind and terminate your parental rights."

The court then asked if respondent mother had any questions. She replied, "No." The State then "advise[d] the Court that the underlying petition here is a dependency petition, so [it] don't think that [they were] at a termination of parental rights portion." The court did not respond to the State's advisement but set the next hearing date.

¶ 11        On September 23, 2021, after a permanency review hearing, the goal remained return home within 12 months. The State recognized respondent mother made reasonable progress and efforts. The State further informed the trial court respondent father was confirmed to be K.W.'s biological father. At the close of the hearing, the court addressed respondent mother as follows:

"This is a very crucial time period for you to really work on yourself, be very honest with your caseworker and move forward so that in six months we're talking about the plan to bring [K.W.] home.

But if you can't correct the conditions that brought [K.W.] into care, then the State can, and most likely would, file a petition

- 4 -

to terminate your parental rights, so you really need to prioritize what is right."

¶ 12    On March 17, 2022, the State informed the trial court "[w]e're getting to the point where it's kind of close," but it asked the court to find respondent mother made reasonable efforts and progress. The State further asked the court to find respondent father made no progress.

¶ 13    On March 2, 2023, the trial court continued with the same goal for respondent mother. The court complimented respondent mother's efforts, stating, "You are doing absolutely fantastic. And we really have—it's been a long time since we've seen reports as glowing and good as this so well done, you, and congratulations on your new job."

¶ 14    On June 15, 2023, the trial court noted the status report was not good. The court observed respondent mother was not regularly getting her medicine. The court emphasized to respondent mother the importance of taking her medication every day. At the close of the hearing, respondent mother stated the following: "I'm not going to get my baby back anyway. Like, this is full of crap. I'm wasting my time."

¶ 15    On February 22, 2024, the trial court found the goal should remain return home within 12 months. The court informed respondent mother of the following:

"I know that there has been some confusion with regard to whether you are in danger of having your parental rights terminated on the Petition that is currently in effect. The attorneys and I have consulted with the DCFS attorney and, in fact, the paragraph that the dependency case was filed under is eligible to have your parental rights terminated. So I'm telling you right now if you

can't correct the conditions that brought your child into care, you are risking the termination of your parental rights."

¶ 16 On May 30, 2024, the trial court addressed respondent mother's statement she did not feel like she needed medication, noting K.W. may not be returned to her:

"[F]our years ago when your child was taken into care, you were in such bad psychiatric trouble that you were unable to care for your child. When you're on the medication, it helps you be present and do the things that you need to do for yourself and for your child. When you're not on the medication, you're not able to conduct yourself in a reasonable manner and do the things that you need to do. So you can choose to not be on the medication but then that choice means that I will choose to not return your daughter to you."

The court then cautioned the State may seek to terminate her parental rights:

"You are speaking more appropriately with her, and I do want to praise you for making those changes in your life. However, this is the second time you've gotten no efforts, no progress. It is possible that if this continues up to the nine[-]month point, the State can and may file a Petition to Terminate your parental rights."

¶ 17 On September 5, 2024, the goal was changed to substitute care pending the court's determination of parental rights. Six days later, the State filed a petition to terminate respondent father's parental rights to K.W. The State alleged he was an unfit parent in that he failed to (1) make reasonable progress toward the return of K.W. during the periods of June 17,

2021, through March 17, 2022, and August 24, 2023, through May 24, 2024 (750 ILCS 50/1(D)(m)(ii) (West 2024)) and (2) make reasonable efforts to correct the conditions that were the basis of K.W.'s removal from respondent mother during the periods of June 17, 2021, through March 17, 2022, and August 24, 2023, through May 24, 2024 (*id.* § 1(D)(m)(i)). On December 3, 2024, the State filed a petition to terminate respondent mother's parental rights, alleging she was unfit in that she failed to (1) make reasonable progress toward the return of K.W. during the period of August 24, 2023, through May 24, 2024 (*id.* § 1(D)(m)(ii)) and (2) make reasonable efforts to correct the conditions that were the basis of K.W.'s removal from respondent mother during the period of August 24, 2023, through May 24, 2024 (*id.* § 1(D)(m)(i)).

¶ 18　　　　After a hearing on fitness, the trial court found both parents unfit due to their failures to make reasonable progress and reasonable efforts during the nine-month period of August 24, 2023, through May 24, 2024. The court ultimately terminated both respondents' parental rights to K.W.

¶ 19　　　　This appeal followed.

¶ 20　　　　　　　　　　　II. ANALYSIS

¶ 21　　　　Respondents first contend the trial court erroneously informed respondent mother her parental rights to K.W. could not be terminated. According to respondents, at the adjudicatory hearing, the court told respondent mother, because a petition was filed to adjudicate K.W. dependent, rather than abused or neglected, the State could not terminate her parental rights. Thus, respondents contend, they were denied due process, as they were misled into believing termination of their parental rights was not an option and the termination of those rights was thus unfair. Respondents acknowledge the issue was not raised before the trial court

but contend we may review the matter as plain error or ineffective assistance of counsel.

¶ 22 The State initially counters by contending this court lacks jurisdiction to resolve challenges to adjudicatory or dispositional matters that occurred years before the termination of their parental rights. In the alternative, the State maintains the record shows respondent mother was informed her parental rights could be terminated well before the State filed its petition to terminate and, therefore, any error is harmless.

¶ 23 First, we examine the State's jurisdiction argument and find we have jurisdiction over respondents' claim. Due process requires the trial court admonish parents of a child alleged to be dependent that compliance with DCFS and its service plans is necessary and the failure to comply risks termination of their parental rights. 705 ILCS 405/1-5(3) (West 2020). The case law shows this court does lack jurisdiction to consider challenges to adjudicatory or dispositional orders in an appeal of an order terminating parental rights. See *In re Leona W.*, 228 Ill. 2d 439, 456-57 (2008). Respondents, however, are not seeking to overturn the adjudicatory or dispositional orders entered in this case. Respondents maintain the trial court's statements during those hearings misled respondents into believing their parental rights could not legally be terminated and, therefore, they seek a reversal of the termination order. Respondents' parental rights were terminated on August 14, 2025. Notices of appeal were filed on August 15, 2025, and September 9, 2025. We therefore have jurisdiction to consider whether respondents' parental rights were improperly terminated. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 24 Turning to respondents' claim they were misled, we consider whether to invoke the plain-error doctrine to forgive respondents' forfeiture of this claim by not raising it before the trial court. The doctrine, which allows appellate courts to review otherwise forfeited errors, applies to appeals from termination proceedings. See *In re Andrea D.*, 342 Ill. App. 3d 233, 242

(2003). Our first step in plain-error review is to ascertain whether an error occurred. *People v. Curry*, 2013 IL App (4th) 120724, ¶ 62. Respondents, as appellants, carry the burden of proving an error occurred. See *id.*

¶ 25　　　　As the record shows respondents were aware their parental rights could be terminated, respondents have not proved they were denied due process and, thus, have not proved an error occurred. We note respondent father was not proved to be the biological father of K.W. until after the adjudicatory and dispositional hearings and, therefore, cannot argue he was misinformed during those hearings the State could not seek to terminate his parental rights. Respondent father has identified no other source of misinformation and, therefore, has not proved a denial of due process resulted in the improper termination of his parental rights. Moreover, as to respondent mother, the record shows, even at the dispositional hearing when the trial court said respondent mother did not risk termination of her parental rights, the court also cautioned that fact "could change" if respondent mother's participation in the case changed. At the March 2021 permanency review hearing, the court plainly told respondent mother if she did not correct the conditions that led to K.W.'s being taken into care, the State could terminate her parental rights. The court followed that admonition by asking respondent mother if she had questions. Respondent mother did not. At the September 2021 hearing, the court stressed again if respondent mother failed to correct the conditions bringing K.W. into care, "the State can, and most likely would, file a petition to terminate your parental rights." At the June 2023 hearing, respondent mother recognized her parental rights could be terminated, stating, "I'm not going to get my baby back anyway. *** I'm wasting my time." While the court addressed the confusion on February 22, 2024, about whether the State could terminate parental rights, the court clarified the State could. While this was in the nine-month period on which respondents' efforts and

progress were considered, the admonition occurred over six months before the State decided to seek termination of respondents' parental rights.

¶ 26    Respondents further argue they were denied the effective assistance of counsel, as counsel did not raise the issue of the improper admonitions and failed to object to hearsay and foundation testimony. As parents, respondents were "entitled to effective assistance of counsel in a termination of parental rights proceeding." *In re T.C.*, 2024 IL App (4th) 231165-U, ¶ 14 (citing *In re M.F.*, 326 Ill. App. 3d 1110, 1119 (2002)). To prevail on their claim, respondent parents must show their counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability the result of the proceeding would have been different absent counsel's errors. *In re I.W.*, 2018 IL App (4th) 170656, ¶ 47.

¶ 27    Respondent father has not shown he was misinformed, meaning he cannot prove either his counsel committed error or there was a reasonable probability the result of the termination proceedings would have been different. As we have found respondent mother was aware her parental rights could be terminated, she has not shown a reasonable probability the outcome of the proceedings would have been different had counsel corrected the trial court's improper admonitions.

¶ 28    Last, respondents assert errors arising from counsel's failure to object to hearsay and foundational testimony at the fitness hearing. Respondents, however, provide no citations to legal authority to support these claims. They are therefore forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Argument *** shall contain the contentions of the appellant and reasons therefor, with citation of the authorities ***. *** Points not argued are forfeited.").

¶ 29                              III. CONCLUSION

¶ 30    We affirm the trial court's judgment.

- 10 -

¶ 31        Affirmed.