**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200166-U

Order filed March 27, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0166 Circuit No. 15-CF-500 |
| DARRELL D. WATTS, | ) ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The circuit court did not abuse its discretion by denying defendant's motion for a continuance to hire new counsel. The court also did not impose an excessive sentence.

¶ 2    Defendant, Darrell D. Watts, appeals from his conviction for unlawful possession with intent to deliver cocaine (720 ILCS 570/401(a)(2)(B) (West 2014)). Defendant contends that the Peoria County circuit court (1) denied his right to counsel of choice, and (2) imposed an excessive sentence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         On July 29, 2015, defendant, out of custody, appeared for preliminary hearing with

private attorney Christopher Leasor of Hall, Rustom & Fritz, LLC, who indicated that he would

be filing an appearance on a subsequent date. The matter was held over to September 3, 2015, for

arraignment. On September 1, 2015, the State charged defendant, by indictment, with unlawful

possession with intent to deliver 100 grams or more of cocaine, a Class X felony (*id.*) and

unlawful possession of a controlled substance being 100 grams or more of cocaine, a Class 1

felony (*id.* § 402(a)(2)(B)).

¶ 5         On September 3, 2015, defendant requested more time to raise the necessary funds to

retain private counsel. Following an inquiry into defendant's financial situation, the court granted

defendant's request for more time to obtain an attorney and stated,

> "I want you to have the lawyer of your choice, but we got to move on. I don't
>
> want to come back and have you say, well, I still haven't accomplished that.
>
> * * *
>
> So, we'll set it for attorney appearance ***. *** look at it from my viewpoint.
>
> June. July. August. September. No lawyer. So, there may be reasons for that, but
>
> fix them and bring them in here."

¶ 6         On September 24, 2015, the appearance of Attorney Jeff Hall, also of Hall, Rustom &

Fritz, LLC, was filed on defendant's behalf and defendant was arraigned. On July 8, 2016,

Leasor filed a motion to suppress evidence. On August 24, 2016, Leasor filed a motion to

withdraw from the case due to "a breakdown in the parties' communication," rendering

continued representation "impossible." The court told defendant, who remained out of custody,

"I'd like for you to hire a private attorney on this, but you don't have a steady job. So I want to

2

move the case on. It's a year old." The court appointed the public defender, William Loeffel. After speaking with Loeffel, defendant informed the court that he wanted to hire a different attorney.

¶ 7    On November 28, 2016, private counsel Larry Smith appeared on behalf of defendant and subsequently filed an appearance.

¶ 8    On August 10, 2017, defendant appeared in custody and informed the court that Smith was unavailable. It turned out Smith suffered a stroke and was in a coma. The court granted defendant a continuance to acquire new counsel.

¶ 9    The court again granted defendant continuances to hire counsel on August 24 and October 5, 2017.

¶ 10    On November 30, 2017, defendant requested yet another continuance to retain new counsel. The court stated, "[y]ou've been given two opportunities to hire a private attorney. I'll give you a third which I never do; however, the *** Smith situation is really unusual."

¶ 11    On February 1, 2018, defendant indicated that he had not yet hired a new attorney. The court told defendant that it could either appoint the public defender or defendant could represent himself. The court added that if it appointed the public defender, defendant was "free" to hire private counsel "as long as it's not so close to the trial date that the attorney now comes in and says I can't be ready for it, I need a continuance." Defendant indicated that he wanted to proceed as a self-represented litigant.

¶ 12    On February 13, 2018, following the court's admonishments, defendant persisted in his request to represent himself. The court continued the matter for a pretrial conference on March 22, and a trial date of April 2, 2018.

¶ 13 On March 22, 2018, defendant indicated that he was not ready to proceed to trial and requested the appointment of an assistant public defender. The court again appointed assistant public defender Loeffel.

¶ 14 On February 4, 2019, Loeffel filed a motion to withdraw the motion to suppress, which was filed by defendant's first private counsel in July of 2016.

¶ 15 On February 6, 2019, defendant informed the court that he wanted to hire private counsel. The court responded, "but how come we're 30 days away from the trial and now—only now are there efforts to have a different lawyer?" Later, the court stated,

> "I'll just simply *** give you what *** appears to be your 3 options. 1: Sticking with Mr. Loeffel until you have the funds to change lawyers, if you want to. 2: Go *pro se*. Or 3: Arrange with counsel to represent you and enter their appearance ***. For right now, Mr. Loeffel continues to be your lawyer."

The court continued defendant's motions pending the resolution of his request for private counsel.

¶ 16 On February 25, 2019, John Lonergan filed his appearance. The court allowed Loeffel to withdraw and continued the case so that Lonergan could become acquainted with the case before trial.

¶ 17 On April 23, 2019, Lonergan filed a new motion to suppress evidence, which adopted the same motion that had been filed by defendant's first private counsel almost three years earlier.

¶ 18 On July 3, 2019, Lonergan filed a motion to withdraw as defendant's attorney due to "a breakdown in communications," and stated that defendant wished to proceed as a self-represented litigant.

4

¶ 19    On July 17, 2019, the parties appeared in court on defendant's motion to suppress. Prior to the hearing, the court stated, "[t]he matter was set at long last for Motion to Suppress. To say it has gone on and on and on and on would be an understatement." Lonergan addressed his motion to withdraw and stated that although defendant previously indicated that he wanted to proceed as a self-represented litigant, defendant had just informed Lonergan that he "would like an opportunity to get new counsel." Lonergan indicated that he was "able and willing" to continue his representation. The following colloquy occurred:

> "THE COURT: We're having a Motion to Suppress today. Are you ready to go on that, [defendant]?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. Mr. Lonergan will remain as your lawyer, and we will proceed with the Motion to Suppress. Call your first witness.
>
> * * *
>
> THE DEFENDANT: I didn't get a chance to go over nothing with my lawyer."

The court proceeded to the hearing.

¶ 20    On August 12, 2019, defendant informed the court that he wanted to proceed as a self-represented litigant and add evidence to the hearing on his motion to suppress. Specifically, defendant alleged that Lonergan had not subpoenaed certain records. The court continued the matter for admonishments on proceeding as a self-represented litigant.

¶ 21    On August 19, 2019, the court admonished defendant regarding his right to proceed as a self-represented litigant. Defendant requested witness information to use for subpoenas. The court appointed Lonergan as standby counsel to assist defendant with the subpoenas. The court

5

continued the matter to allow defendant to present evidence as a self-represented litigant in his motion to suppress.

¶ 22    On September 24, 2019, the State indicated that standby counsel had informed it that defendant had only provided subpoenas six days earlier and that these were essentially "hodgepodge and directionless." The court determined that defendant was unprepared to present additional evidence in support of his motion and concluded the hearing. Defendant stated that it was "tougher" than he thought to represent himself and requested counsel. Given defendant's history of hiring and firing attorneys during the pendency of the case, the court continued the matter to consider defendant's request.

¶ 23    On September 26, 2019, the court reappointed assistant public defender, Loeffel.

¶ 24    On October 9, 2019, the court issued a written order denying defendant's motion to suppress. The court addressed its denial of defendant's request for a continuance to hire new counsel, noting defendant's vacillation between private counsel, the public defender, and self-representation, and the timing of his request to hire new counsel on the day of the suppression hearing. The court determined these actions, in the context of all the prior representation motions, were attempts to delay the proceedings. The court continued that it "did not want to formalize a break between lawyer and client [on the day of the suppression hearing]" and instead, proceeded to the hearing that day and continued defendant's request for new counsel to a later date. In conclusion, the court found that defendant's failure to add any additional evidence or even indicate any compelling evidence at the follow-up hearing date and "his last-minute subpoena effort was a pure delay tactic with no purposeful objective."

¶ 25        On December 16, 2019, the matter proceeded to a jury trial.[1] The evidence adduced at trial showed that when defendant approached a roadside safety checkpoint, he stopped his vehicle and reversed "10 to 30 yards." Officers stopped defendant and directed him to the checkpoint. Defendant appeared nervous upon contact with the officers and had an outstanding warrant. Following his arrest, officers located several small bags of cocaine, a large amount of cash in the vehicle, and a bag of cocaine in defendant's sock. When asked what he was selling, defendant indicated that the substance was "coke," and the money was from a recently sold boat. While officers spoke to defendant, he attempted to flee the scene but was detained. The jury found defendant guilty of the lesser included offense of unlawful possession with intent to deliver more than 15 grams but less than 100 grams of cocaine, a Class X felony (720 ILCS 570/401(a)(2)(A) (West 2014)).

¶ 26        Defendant's presentence investigation report (PSI) showed that his criminal history involving drugs began in 2001. Defendant received probation for unlawful possession of a controlled substance in 2001 and convictions for unlawful possession of a controlled substance in 2004, unlawful possession of marijuana with intent to deliver in 2008 in Illinois and federal convictions for unlawful possession of a controlled substance with intent to distribute in 2005, and unlawful possession of cocaine, crack cocaine, and marijuana with intent to distribute and unlawful possession of a firearm during a drug offense in 2017. Defendant served prison sentences ranging from three to four years for his 2004, 2005, and 2008 convictions. Defendant was sentenced to 20 years' imprisonment for his 2017 federal convictions. While out on bond in the present case, defendant accrued new offenses in Peoria County for unlawful possession of a

_____

[1]Defendant's first trial began on November 19, 2019, ending in a mistrial due to a hung jury.

controlled substance in two separate instances that remained pending at the time of sentencing. Defendant was 36 years old at the time of sentencing, had five children ranging from 3 to 15 years old, received his general education diploma in prison in 2007, and attended a welding program in 2011. Defendant did not complete the program. Defendant had been self-employed as a barber for eight years before his present incarceration.

¶ 27    On March 11, 2020, the case proceeded to sentencing. Defendant's former stepmother testified that defendant was active in the lives of his five children. Defendant's sister-in-law testified that defendant provided a home for two of his five children. Defendant's uncle testified that his family supported defendant and would help him upon his release.

¶ 28    The State began its sentencing argument by noting the nature of the offense and that the witnesses testified that defendant provided for only two of his five children. The State continued by addressing defendant's prior criminal history, and the additional offenses defendant committed while the present case was pending. The State asked for a sentence on the higher end of the sentencing range.

¶ 29    Defense counsel argued that defendant still had family members that cared for and supported him. Counsel asked the court to allow defendant another opportunity to prove himself and requested a sentence at the lower end of the sentencing range.

¶ 30    In allocution, defendant apologized for committing the present offense and discussed his difficult upbringing. Defendant claimed the loss of his mother contributed to his criminal delinquency. Defendant noted that his prior criminal history and the present offense were nonviolent. Defendant stated that he wanted to "pay [his] debt to society, and be a man, and take the responsibility for breaking the law."

8

¶ 31        In its ruling, the court considered the factors in aggravation and mitigation, the PSI, the parties' arguments, the evidence presented, defendant's statement in allocution, and the history and character of defendant with "due regard for the circumstance and nature of the offense." The court discussed defendant's lengthy criminal history and prior prison sentences. The court also noted the underlying facts of the offense, in that defendant attempted to circumvent the roadside safety checkpoint and flee the scene. The court acknowledged defendant's supportive family members. The court continued, "You can't keep from being the provider and the dealer of cocaine and serious contraband here. *** Because if you could, surely that stop on June 20th of 2015 would have been a seminal moment for you. *** [B]ut it wasn't because it just happened over and over again." The court sentenced defendant to 27 years and 6 months' imprisonment.

¶ 32        On March 20, 2020, defendant filed a motion to reconsider his sentence, alleging that the court did not properly consider the circumstances regarding defendant's life and expressed remorse. The court denied defendant's motion to reconsider. Defendant appealed.

¶ 33                                II. ANALYSIS

¶ 34                             A. Counsel of Choice

¶ 35        Defendant first argues that his conviction should be reversed where the circuit court violated his sixth amendment right to counsel of his choice when it failed to inquire into whether defendant's reasons for seeking new counsel were intended to delay the proceedings. Defendant acknowledges that he did not properly preserve this issue for appellate review but asks for review under the second prong of the plain error doctrine. Alternatively, he argues that counsel was ineffective for failing to preserve this claim and include it in a posttrial motion.

¶ 36        The first step under the plain error doctrine is to determine whether a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). If the circuit court committed

9

such an error, then we must determine whether the error is reversible. *Id.* An unpreserved error is reversible when (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.*

¶ 37        The sixth amendment of the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel, which encompasses the right to be represented by counsel of choice. U.S. Const., amend. VI; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *People v. Baez*, 241 Ill. 2d 44, 104-05 (2011). However, "[a] defendant who abuses the sixth amendment in an attempt to delay trial and thwart the effective administration of justice may forfeit his right to counsel of choice." *People v. Tucker*, 382 Ill. App. 3d 916, 920 (2008).

¶ 38        The decision whether to grant a continuance for purposes of substitution of counsel is a matter left to the discretion of the circuit court and will not be overturned absent an abuse of discretion. *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000). "It is within the trial court's discretion to determine whether the defendant's right to selection of counsel unduly interferes with the orderly process of judicial administration." *Tucker*, 382 Ill. App. 3d at 920. "In balancing the judicial interest of trying the case with due diligence and the defendant's constitutional right to counsel of choice, the court must inquire into the actual request to determine whether it is being used merely as a delaying tactic." *People v. Burrell*, 228 Ill. App. 3d 133, 142 (1992). Where a court conducts an inquiry into the circumstances of defendant's motion, and substitution counsel does not stand " 'ready, willing, and able to make an unconditional entry of appearance' on defendant's behalf" the court does not abuse its discretion

by denying defendant's request. *People v. Curry*, 2013 IL App (4th) 120724, ¶ 51 (quoting *People v. Koss*, 52 Ill. App. 3d 605, 607-08 (1977)).

¶ 39    In the present case, the court inquired whether defendant was ready to proceed to the hearing as a self-represented litigant, as he had indicated in the motion. Defendant told the court that he was unprepared to proceed. Given the number and nature of representations pursued by defendant in this case, the court's inquiry was sufficient to establish that defendant's continuance request on the hearing date was a delay tactic. See *People v. Adams*, 2016 IL App (1st) 141135, ¶ 15 ("[E]ven where new counsel is not identified, reversal of a trial court's denial of a continuance is warranted where the trial court fails to inquire into whether defendant is using the request as a delaying tactic."). The record contains no indication that new counsel was standing " 'ready, willing, and able to make an unconditional entry of appearance' on defendant's behalf." *Curry*, 2013 IL App (4th) 120724, ¶ 51 (quoting *Koss*, 52 Ill. App. 3d at 607-08). Instead, Lonergan indicated that defendant wanted a continuance to hire new counsel. Given the absence of new counsel standing ready to represent defendant, defendant's disinclination to represent himself, and Lonergan's ability and willingness to represent defendant, the court denied defendant's request for a continuance to obtain new counsel and the motion to suppress hearing went forward with Lonergan as defendant's counsel. See *United States v. Wheat*, 486 U.S. 153, 159 (1988) (The aim of the sixth amendment is "to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers").

¶ 40    We conclude that the court did not abuse its discretion in determining that defendant's continuance request to obtain new counsel was a delay tactic; indeed, the three-year timeline, over which defendant hired three private lawyers, represented himself twice, and accepted the

11

appointment of the public defender three times, more than supports the court's denial of defendant's motion to continue.

7/29/15 - Defendant appeared with private attorney Leasor for arraignment, who indicated he would be filing an appearance thereafter.

9/3/15 - Defendant asked the court for more time to hire private attorney (needed to raise more money for attorney).

9/24/15 - Attorney Hall (Hall, Rustom & Fritz, LLC/Leasor's firm) files appearance for defendant.

7/8/16 - Motion to suppress filed.

8/24/16 - Leasor files motion to withdraw due to "breakdown in parties' communications." Court appoints assistant public defender Loeffel for the first time. Defendant insisted he wanted to hire new private counsel.

11/28/16 - Second private counsel, Larry Smith, files appearance.

8/10/17, 8/24/17, 10/5/17, 11/30/17 - Court grants multiple continuances to hire new counsel due to counsel Smith's stroke.

2/1/18 - Defendant has not hired new counsel but declines reappointment of public defender. Asks to represent himself.

2/13/18 - Court admonished defendant about self-representation and defendant elects to represent self. Court sets pretrial conference date of 3/22/18 and trial date of 4/2/18.

3/22/18 - Defendant tells the court he is not ready for trial and requests and receives reappointment of assistant public defender Loeffel.

2/4/19 - Loeffel files motion to withdraw motion to suppress.

2/6/19 - Defendant informs the court he wants to hire private counsel. Court tells defendant they are 30 days out from trial date and he has three options: stick with the public defender, proceed *pro se*, or find private counsel.

2/25/19 - Third private counsel, Lonergan, files appearance on defendant's behalf.

4/23/19 - Lonergan refiles motion to suppress from July 2017.

7/3/19 - Lonergan files motion to withdraw due to "breakdown in communications."

7/17/19 - Lonergan informs the court that defendant had told him he had wanted to proceed *pro se* but now wanted to hire new counsel. Lonergan said he was "able and willing" to continue his representation. Court indicated that the hearing was going to go forward, and asked defendant if he was ready to go forward. Defendant says no. The court informed defendant that Lonergan would remain his lawyer and the hearing commenced.

8/12/19 - Defendant says he wants to represent himself moving forward and asked to add evidence to the motion to suppress hearing, claiming that Lonergan did not subpoena certain records.

8/19/19 - Court again admonished defendant on self-representation. Defendant elects to represent himself for the second time, and the court appoints Lonergan as standby counsel to effect defendant's subpoenas for the continuation of defendant's motion to suppress.

9/24/19 - Defendant presents no additional evidence, having failed to work with Lonergan to timely issue subpoenas that were sensical. Court concludes

13

suppression hearing and defendant asks for reappointment of public defender for the third time.

9/26/19 - Assistant public defender Loeffel reappointed.

¶ 41 Throughout the pendency of defendant's case, the court exercised tremendous patience and indulged defendant's numerous continuances to obtain various counsel of his choosing. Indeed, if one adds up all the different private counsel, defendant's periods of self-representation, and the times the public defender was appointed, defendant had no less than eight different stages of representation prior to the court's ruling on his motion to suppress. Simply put, where new counsel was not ready, willing, and able to make an unconditional entry of appearance on defendant's behalf, the court did not abuse its discretion when it denied defendant's continuance request on the date of the suppression hearing. See *Curry*, 2013 IL App (4th) 120724, ¶ 51.

¶ 42 Because no error occurred, defendant cannot establish plain error. Defendant's ineffective assistance of counsel claim counsel similarly fails because counsel was not ineffective for failing to raise this meritless issue. See *People v. Hale*, 2013 IL 113140, ¶ 17 ("[W]e may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance"); see also *People v. Enis*, 194 Ill. 2d 361, 377 (2000) ("If the underlying issue is not meritorious, then defendant has suffered no prejudice.").

¶ 43 B. Excessive Sentence

¶ 44 Defendant next argues that his sentence is excessive because the circuit court failed to give adequate weight to defendant's nonviolent criminal history, family ties, remorse, and the nature of the offense.

¶ 45 The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful

14

citizenship." Ill. Const. 1970, art. I, § 11. The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998).

¶ 46      In mitigation, a court shall consider whether: (1) defendant's criminal conduct caused or threatened serious physical harm; (2) defendant's criminal conduct was the result of circumstances unlikely to recur; and (3) the character and attitudes of defendant indicate that he is unlikely to commit another crime. 730 ILCS 5/5-5-3.1(1), (8)-(9) (West 2014). The weight that the court attributes to any factors in mitigation depends on the particular circumstances of the case. *Kolzow*, 301 Ill. App. 3d at 8. The court is not required to cite each factor it considered in fashioning a defendant's sentence. *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011).

¶ 47      We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will find an abuse of discretion only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 48      At the outset, the statutory sentencing range for unlawful possession of cocaine with intent to deliver, a Class X felony, is 6 to 30 years' imprisonment. See 720 ILCS 570/401(a)(2)(A) (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014). Defendant's 27-year and 6-

month prison sentence is within the statutory range. Therefore, the sentence is presumptively valid. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 27.

¶ 49   During the sentencing hearing, the court explicitly said that it considered the factors in aggravation and mitigation, the evidence presented, defendant's statement in allocution, the PSI, the history and character of defendant, and the circumstances and the nature of the offense. Defendant cites nothing in the record that shows the court affirmatively dismissed defendant's nonviolent criminal history, family ties, remorse, or the nature of the offense. See *Hernandez*, 204 Ill. App. 3d at 740. Instead, the record shows that the court expressly considered defendant's supportive family and discussed the nature of the present and past offenses. Further, the court noted defendant's likelihood to recommit the offenses when it discussed defendant's subsequent violations. Ultimately, the court determined that defendant's mitigating evidence did not significantly deprecate the seriousness of the offense or warrant the imposition of a lesser sentence. We conclude that the court properly weighed the factors in mitigation and, thus, did not abuse its discretion in sentencing defendant. Defendant's sentence is not excessive.

¶ 50                                   III. CONCLUSION

¶ 51   The judgment of the circuit court of Peoria County is affirmed.

¶ 52   Affirmed.